Argued October 10, reversed and remanded November 28, 1922.

## DENIFF *v.* CHARLES R. McCORMICK & CO.

(210 Pac. 703.)

**Shipping—Evidence Insufficient to Go to Jury on Question Whether Defendant was Owner or Operator of Steamship on Which Plaintiff was Injured.**

1.  In an action for injuries sustained while traveling as a passenger on a steamship in which defendant denied being the owner or operator of such vessel at the time of the accident, plaintiff's evidence *held* insufficient for submission of case to jury.

**Evidence — Letter-head No Evidence That Defendant Owned or Operated Vessel Three and One-half Months Prior to Use of Letter-head by It.**

2.  In an action for injuries to passenger on a certain steamship, defended on the ground that the defendant did not own or operate the ship at the time of the accident, a letter-head, containing a list of vessels, including that upon which plaintiff was injured, used by defendant three and one-half months after the voyage during which the accident occurred, was not proof that defendant

owned or operated the ship during such voyage, since such letter-head will not be given a retrospective effect, contrary to the general rule that presumptions do not run backward.

**Shipping — Rights and Liabilities of Charterer Fixed by Charter Party.**

3. The rights and liabilities of a charterer of a vessel are fixed by the contract between the owner of the charterer, usually called a charter-party.

**Shipping—Ownership and Possession of Vessel Presumed to Remain in Owner, Unless Contrary Intention is Manifested by Contract.**

4. The ownership and possession of the vessel, with the liabilities incident thereto, are presumed to remain in the owner, unless a contrary intention is unequivocally manifested by the contract.

**Shipping—Letter-head, Proving Defendant a Charterer of Vessel on Which Plaintiff was Injured, not Sufficient to Prove Defendant Responsible.**

5. In an action for injuries sustained while a passenger on a certain ship, in which defendant denied that it owned or operated ship at time of accident, a letter-head, even if sufficient to show that defendant was a charterer of a vessel, was not sufficient to prove defendant liable, in the absence of evidence that the charter-party contained unequivocal terms, which imposed upon defendant the rights and liabilities of an owner during such voyage.

**Shipping—Charter-party Presumed to be One in Which the General Owners Retain the Control, Management, and Navigation of the Ship and Legal Responsibility of Ownership.**

6. A charter-party will be presumed to be one of affreightment in which the general owners retain the control, management and navigation of the ship and the legal responsibility of ownership.

**Shipping — Provision in Charter-party That Master Employed by Owner shall be Under Charterer's Direction Does not Make Charterer Liable for Negligence of Officers and Crew.**

7. A provision in a charter-party that the master of the vessel employed by the owner shall be under the directions of the charterer, who may direct where cargo shall be taken and discharged, does not make the charterer liable for the negligence of the officers and crew in the management of the vessel.

From Multnomah: H. H. BELT, Judge.

Department 2.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. McCamant, Bronaugh & Thompson* and *Messrs. McCutchen, Willard, Mannon & Greene,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief and oral argument by *Mr. John W. Kaste.*

McCOURT, J.—This is an action brought to recover damages alleged to have been sustained by plaintiff while she was traveling as a passenger on the steamship "Willamette," from San Francisco to Portland. The cause being at issue upon all the material averments of plaintiff's complaint, a jury trial was had, resulting in a verdict in favor of plaintiff, upon which judgment was entered. Defendant appeals.

Defendant assigns numerous errors, the most important of which relate to the denial of defendant's motion for a judgment of nonsuit against plaintiff, and to the refusal of the trial court to direct a verdict for defendant.

Plaintiff alleged that while she was traveling as a passenger on the steamer "Willamette," she undertook to sit down upon a steamer chair on the deck of the vessel; that as a result of the negligence of defendant, the chair gave way and threw her to the deck, causing the injuries and ensuing damages of which she complains. Plaintiff's proof of negligence, and injury and damage caused thereby, was sufficient for submission to the jury.

Plaintiff also alleged in her complaint that the defendant was the beneficial owner or operator of the steamship "Willamette" at the time plaintiff was a passenger thereon and received the injuries of which she complains. Plaintiff's evidence disclosed that defendant was not the owner of the vessel, and the trial court took from the jury the question of defendant's ownership, but permitted the case to go to the jury on the allegation in plaintiff's complaint, denied by defendant, that defendant was the operator of

the vessel at the time plaintiff alleges she was injured.

1. Defendant earnestly insists that plaintiff furnished no competent evidence to establish that issue, and consequently defendant's motion for a judgment of nonsuit should have been allowed. Defendant also insists that the evidence introduced by defendant not only did not aid the evidence of the plaintiff upon the question of the identity of the operator of the vessel, but clearly established that defendant was not such operator, and that therefore it was error for the court to refuse to direct the jury to return a verdict in favor of defendant.

To sustain the allegation of the complaint that plaintiff was a passenger upon the steamship "Willamette," plaintiff introduced in evidence a passenger check, part of a ticket which was obtained at her request by her daughter from some office in San Francisco, and entitled the holder thereof to passage upon the steamship "Willamette" from San Francisco to Portland. Plaintiff testified that she did not know where her daughter obtained the ticket. At the top of the passenger check appear the words, "McCormick Steamship Line," and below this the words, "Steamer Willamette. Sailing Jan. 21, 1919." On the back is stamped the words, "West Coast S. S. Line. Jan. 20, 1919. Market St. S. F. Cal."

Upon arriving at Portland, plaintiff left the vessel and proceeded to an office to which she had been directed by someone on board the steamer "Willamette," as the office of the company that operated the boat. She understood it was the office of the Parr-McCormick Steamship Company. Later in the day her daughter, to whose home she had gone, called the office of the Parr-McCormick Steamship Com-

pany by telephone, and complained that plaintiff was injured.

Plaintiff also introduced in evidence the letter-head of the defendant, which was in use by it at the time of writing a letter on May 10, 1919, nearly four months after the occurrence of plaintiff's alleged injury. Upon that letter-head is the following printed matter:

"Steamers
Klamath
Willamette
Multnomah
Celilo
Wapama
Wahkeena
Ernest H. Meyer
  Motorships
City of Portland
S. I. Allard
City of St. Helens"

Chas. R. McCormick & Company
Wholesale Lumber
Manufacturers and Cargo
Shippers
912-13-14 Yeon Bldg.
Portland, Oregon.

Main office
Fife Bldg., San
Francisco
Los Angeles office
533-5 Van Nuys
Bldg.
Mills and Creosoting
Plant at
St. Helens, Oregon
Yards at
San Diego, Cal.
E. H. Meyer, Manager
Portland Office.

The above-mentioned letter-head was identified by E. H. Meyer, manager of defendant, called as a witness by plaintiff, who testified in response to questions asked by a juror, that defendant was not the owner of the steamship "Willamette"; that defendant had never operated the boat for profit, and was not so operating it at the time of the injury to plaintiff. The witness also stated: "We load the boat."

The foregoing was all the evidence offered by plaintiff in her case in chief, to establish the identity of the operator of the boat, or to connect defendant with its operation.

Having established that defendant was not the owner of the vessel, plaintiff, in order to make a case sufficient for submission to the jury, was required to furnish evidence that defendant was operating the steamship "Willamette" at the time plaintiff was injured. Plaintiff insists that this requirement was met by proof that three and one-half months after the

voyage in question, defendant was using the letter-head above set forth.

2. Plaintiff claims that the name "McCormick" appearing prominently both upon the ticket and in the corporate name of defendant, together with the letter-head containing a list of vessels, which included the steamship "Willamette," authorized the jury to infer that defendant was operating the vessel at the time plaintiff was injured.

No direct evidence was offered to show that the vessel was in the possession of the defendant. The evidence fails to connect defendant with the passenger check, or the ticket of which it was a part. If it had any tendency to identify the operator of the vessel, the name "McCormick" appearing upon the passenger check, when considered with the evidence that plaintiff on leaving the vessel, entered an office having some connection with the steamship "Willamette," which she understood to be the office of the Parr-McCormick Steamship Company, and that plaintiff later called that company by telephone concerning the injuries received by her while a passenger upon the "Willamette," points to the latter company, and not the defendant, as such operator. It follows that the probative force of the letter-head is not aided by the passenger check.

Before the letter-head can be regarded as an item of evidence in support of plaintiff's case, it is necessary to give such letter-head a retrospective effect, contrary to the general rule that presumptions do not run backward: 22 C. J. 92.

Assuming, without deciding, that the circumstances of this case except the letter-head from that general rule, we proceed to consider its value as evidence, according to it the utmost weight permissible. The letter-head contains nothing to indicate that defend-

ant was engaged in the business of transporting freight or passengers by water or otherwise: on the contrary, the matter upon the letter-head announces that defendant is engaged in the business of manufacturing lumber, which it sells at wholesale and ships in cargo lots; the list of vessels on the letter-head, considered in connection with the printed statement, "Wholesale Lumber Manufacturers and Cargo Shippers," implies that defendant employed the listed vessels, including the steamship "Willamette," in making cargo shipments of the lumber manufactured by it.

This evidence, at most, created an inference that defendant was a charterer of the steamship "Willamette" for the shipment of lumber cargoes.

3. Plaintiff claims that the letter-head shows that defendant was a charterer of the vessel, but makes the additional claim that because defendant was such charterer, it was necessarily the operator of the vessel, and liable as such.

The rights and liabilities of a charterer of a vessel are fixed by the contract between the owner and the charterer, which contract is usually called a charter-party.

4. Ownership and possession of the vessel, with the liabilities incident thereto, are presumed to remain in the owner, unless a contrary intention is unequivocally manifested by the contract: *Adams* v. *Carey*, 60 Or. 153, 159 (118 Pac. 553).

5. In order then to complete her proof, plaintiff was obliged to show that the charter-party or contract, if one existed between defendant and the owner of the vessel, contained unequivocal terms which imposed upon defendant the rights and liabilities of an owner of the vessel for the voyage that was in progress at the time plaintiff was injured. Plaintiff made no attempt to supply this proof.

The inference predicated upon the letter-head, that defendant was a charterer of the vessel properly did not furnish á basis for the further inference that the charter-party contained terms favorable to plaintiff's right of recovery: Sec. 796, Or. L.; *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008); *Stamm* v. *Wood,* 86 Or. 174 (168 Pac. 69); *State* v. *Rader,* 94 Or. 432, 456 (186 Pac. 79).

6. If, however, it may be said that plaintiff was not bound to furnish evidence of the terms of the charter-party or contract between the owner and defendant, the case of plaintiff is still defective, for the reason that primarily the presumption attaches to all such contracts that the contract is one of affreightment, in which the general owners retain the control, management and navigation of the ship and the legal responsibility of ownership: *Grimberg* v. *Columbia Packers' Assn.,* 47 Or. 257, 262 (83 Pac. 194, 114 Am. St. Rep. 927, 8 Ann. Cas. 491); *Multnomah Co.* v. *Willamette Towing Co.,* 49 Or. 204, 215 (89 Pac. 389); *Adams* v. *Carey,* 60 Or. 153, 159 (118 Pac. 553).

In the case of *Grimberg* v. *Columbia Packers' Assn., supra,* the court said:

"The presumption alluded to is said to be so strong that, if the end sought to be affected by the charter-party can conveniently be accomplished without a transfer of the vessel to the charterers, the law is not disposed to regard the contract as a demise; and this, even if there be express words of grant in the formal parts of the instrument."

Plaintiff makes the further contention that the infirmities, if any, of her case in chief were cured by the evidence offered by defendant.

The ship's register was introduced in evidence by defendant, and showed that the Willamette Steamship Company was, and had been, the owner of the steamship "Willamette" for many years. O . C.

Orsland, master of the "Willamette" since September, 1919, testified that he was employed by, and received his salary from, the Willamette Steamship Company; that on north-bound voyages the vessel carried general cargo, but when south-bound carried lumber only; that passengers were carried on both north-bound and south-bound voyages; that defendant directed witness where to load lumber for transportation south, and also directed witness where to discharge such lumber.

7. Counsel for plaintiff says that the exercise by defendant of authority to direct where cargo was to be taken and discharged constituted evidence that defendant controlled and operated the vessel.

A provision in a charter-party that the master of the vessel employed by the owner shall be under the directions of the charterer, who may direct where cargo shall be taken and discharged, does not make the charterer liable for the negligence of the officers and crew in the management of the vessel: *Multnomah Co.* v. *Willamette Towing Co.,* 49 Or. 204, 215 (89 Pac. 389).

The evidence adduced by plaintiff, viewed in the light most favorable to plaintiff, failed to furnish any substantial proof that defendant was responsible for plaintiff's injuries. It follows that a judgment of nonsuit should have been given in response to defendant's motion therefor.

Discussion of the other questions presented by the record becomes unnecessary in view of the foregoing conclusions.

The judgment is reversed and the cause remanded to the Circuit Court, with directions to enter therein a judgment of nonsuit against plaintiff.

Reversed and Remanded With Directions.

McBride, Bean and Brown, JJ., concur.