No. 86-09

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

PHYLLIS CRUMLEY,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

O'Brien & Conrad; Barbara J. Conrad, Missoula,
Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Kathy Seeley, Asst. Attorney General, Helena
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

---

Submitted on Briefs: July 10, 1986

Decided: September 16, 1986

Filed: SEP 16 1986

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from a conviction for felony theft of food stamps by making false representations. After a trial in the District Court of the Fourth Judicial District, Missoula County, the defendant was sentenced to five years in prison, and the sentence was suspended on condition she pay $1,808.00 in restitution to SRS. She appeals. We affirm.

Appellant raises two issues:

1. Whether or not there is sufficient evidence to conclude beyond a reasonable doubt that the defendant did not maintain a "separate household" in accordance with the governing regulations?

2. Even if it is concluded that the defendant did not in fact maintain a "separate household" as defined, was there sufficient evidence to conclude beyond a reasonable doubt that the defendant knowingly made a false statement or representation that she maintained a "separate household"?

The District Court found that from October 12, 1982 through May 31, 1983, the defendant applied for and received and used food stamps in excess of $300 from the Montana Department of Social and Rehabilitation Services. To receive these food stamps, the defendant represented that she, her husband David, her child, her sister-in-law Cindy Heminger and her child maintained a separate household in the form of an upstairs apartment in her parent's home. These representations enabled the defendant to receive $50 a month more in food stamps than they would have been entitled to if they were living in their parent's household. The District Court found the defendant and her parents were not in

separate households because: they all lived in a single family dwelling containing one kitchen located downstairs, the area defendant claimed was an upstairs apartment were upstairs bedrooms, with no tables, dishes, pots, pans or appliances, defendant and her family never paid rent for the bedrooms, when defendant and her sister-in-law learned of a planned home visit to verify that a separate household existed they withdrew their application for further food stamps, and when the home visit occurred SRS employees found no evidence of a separate apartment but only two bedrooms and a hallway.

As to the first issue, defendant argues there is insufficient evidence to show defendant did not maintain a "separate household" as required by SRS regulations. Defendant maintains that she purchased her own food and prepared her own meals, separate from those of her parents. She alleges that she used an electric frying pan, a crockpot, a popcorn popper, and a coffee pot and ate on folding chairs. She maintains that the appliances she used were not immediately noticeable because the items were unplugged and stored away when not in use because of the children. She contends she was maintaining a separate household within the SRS definition.

We begin with the test to determine if there is sufficient evidence to support the verdict: whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; State v. McHugh (Mont. 1985), 697 P.2d 466, 469, 42 St.Rep. 371, 374. The elements of the

- 3 -

crime here are set out in § 53-2-107, MCA and §
45-6-301(4)(a), MCA.

Section 53-2-107, MCA, provides:

Whoever knowingly obtains by means of a willfully
false statement, representation, or impersonation
or other fraudulent devise public assistance to
which he is not entitled is guilty of theft as
provided in 45-6-301.

Section 45-6-301(4)(a), MCA, provides:

(4) A person commits the offense of theft when he
purposely or knowingly obtains or exerts
unauthorized control over any part of any public
assistance provided under Title 53 by a state or
county agency, regardless of the original source of
assistance, by means of:

(a) a knowingly false statement, representation,
or impersonation.. . .

As we review this issue, we must accept the version of
the facts as found by the District Court judge. We cannot
consider disputed questions of fact on appeal, nor can we
weigh the credibility of the witnesses or their testimony.
State v. Green (Mont. 1984), 685 P.2d 370, 371-72, 41 St.Rep.
1562, 1564; State v. Shurtliff (1981), 195 Mont. 213, 215-16,
635 P.2d 1294, 1296; State v. Crockett (1966), 148 Mont. 402,
406-07, 421 P.2d 722, 724. The food stamp regulation which
defined household stated:

[A] household may be composed of any of the
following individuals or groups:

1. an individual living alone;

2. an individual living with others but who
customarily purchases food and prepares meals for
home consumption separate and apart from the
others;

3. a group of individuals who live together and
customarily purchase food and prepare meals
together for home consumption.

SEPARATE HOUSEHOLD STATUS CANNOT BE GIVEN--In no
event shall separate household status be granted
to:

1. Children under 18 years of age under the parental control of a member of the household;

2. Either parents living with their children or children living with their parents unless at least one parent is 60 years of age or older;

The record shows the defendant's parents with whom she lived were at that time, 47 and 45 years old.

The record shows that several SRS employees reviewed the regulations with the defendant and explained that parents and children must live in totally separate apartments to be certified separately.

In light of the evidence in the record, we hold there was sufficient evidence to conclude beyond a reasonable doubt that defendant did not maintain a separate residence.

Second, defendant argues that there was not sufficient evidence to conclude that she made a knowing false statement. She contends that Cindy Heminger, her sister-in-law, and Katherine Fairbanks, her mother, were responsible for creating the impression that there was a separate household. She also contends she did not know what a separate household was therefore she could not make an intentionally false statement about how her living situation falls within the concept.

Intent is normally inferred from conduct and surrounding circumstances. State v. Pierce (1982), 199 Mont. 57, 647 P.2d 847; State v. Weaver (1981), 195 Mont. 481, 637 P.2d 23. In this case there is evidence in the record that several SRS employees explained the concept to her and interviewed her as to whether there was indeed a separate household. There is also in the application for food stamps signed by the defendant, a section which asks the applicant to list all members of the household. In a large box, in capital letters

is the following statement: "INCLUDE AS HOUSEHOLD MEMBERS, THE FOLLOWING PEOPLE WHO LIVE TOGETHER: Parents and children under age 60." (Emphasis in original.)

Given the evidence in the record, we find there was sufficient evidence to conclude the defendant knowingly made a false statement in order to obtain public assistance.

We affirm the conviction and sentence below.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 6 -